UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | 5:26-cv-02459-SSS-DMK | Date | May 18, 2026 |
|---|---|---|---|
| Title | *Mayra Aurelia Pineda Balan v. Markwayne Mullin et al.* | | |

| Present: The Honorable | SUNSHINE S. SYKES, UNITED STATES DISTRICT JUDGE |
|---|---|

| Irene Vazquez | Not Reported |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorney(s) Present for Plaintiff(s): | Attorney(s) Present for Defendant(s): |
|---|---|
| None Present | None Present |

**Proceedings:    (IN CHAMBERS) ORDER (1) DENYING AS MOOT PETITIONER'S EX PARTE APPLICATION FOR A TEMPORARY RESTRAINING ORDER [DKT. NO. 7]; AND (2) GRANTING THE PETITION [DKT. NO. 1]**

Before the Court is Petitioner Mayra Aurelia Pineda Balan's ex parte application for a temporary restraining order and Petition. ["Application," Dkt. No. 7; "Petition," Dkt. No. 1]. The Court finds this matter appropriate for resolution without a hearing. *See* Fed. R. Civ. P. 78; L.R. 7-15. After considering the papers filed in support of and in opposition to the matters, the Court **DENIES** the Application **AS MOOT**; and **GRANTS** the Petition.

## I.    BACKGROUND

On May 8, 2026, Petitioner Mayra Aurelia Pineda Balan ("Petitioner"), proceeding with counsel, filed a Verified Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241, contending that her detention violates her rights to substantive and procedural due process under the Fifth Amendment, provisions of the Immigration and Nationality Act ("INA") and its accompanying regulations, the Administrative Procedure Act ("APA"), and several related claims. [Petition at 10–13]. Petitioner seeks immediate release from immigration custody as well as declaratory and injunctive relief. Attached to the Petition is a copy of the I-797,

granting Petitioner's I-360 Petition, and authorizing her to work in the United States under a C31 classification, dated December 19, 2016.  [Dkt. No. 1-1].

On May 13, 2026, Petitioner filed the Application, with supporting documents: (1) declaration of counsel, Joye Wiley [Dkt. No. 7-1]; (2) notice to appear  [Dkt. No, 7-2]; (3) EOIR case status [Dkt. No. 7-3]; (4) order of supervision and proof of compliance [Dkt. No. 7-4].

On May 14, 2026, Respondents filed an Answer to the Petition and Response to the Application stating, "The Respondents are not presenting an opposition argument at this time.  Should the Court enter relief, judgment may be entered, and consistent with the 'expeditious resolution' of § 2241 Immigration Petitions required by the General Order, no more filings or proceedings will be necessary in this matter."  [Dkt. No. 10 at 2].  On the same date, Petitioner filed a Reply to her Application stating, "Given that Respondents are not presenting opposition argument at this time, Petitioner rests on the arguments already submitted and will not be filing a reply."  [Dkt. No. 11 at 2].

## II.    FACTS

Petitioner is a 39-year-old citizen of Mexico.  [Petition ¶ 1].  She entered the United States in 2005 and has lived here for over twenty years with no criminal record.  [*Id*.]  Petitioner has four U.S. citizen children.  [*Id*.].  On August 29, 2018, Petitioner's I-360 petition under the Violence Against Women Act was granted "as the victim of battery and extreme cruelty at the hands of a US citizen spouse.  [*Id*. ¶ 11].  Petitioner was also granted work authorization as the beneficiary of the petition.  [*Id*.].  Petitioner was also placed on an Order of Supervision ("OSUP") while pursuing her I-360 petition and has remained on OSUP ever since.  [*Id*.].

In 2019, Petitioner was placed in removal proceedings, but her case was closed on April 22, 2019, due to Respondents' failure to prosecute.  [*Id*. ¶ 18].  Petitioner filed for adjustment of status but was denied on account of missteps in the process, but remains eligible to adjust status to lawful permanent resident.  [*Id*. ¶ 17].

Petitioner was working in assembly at an aerospace company prior to her arrest.  [*Id*. ¶ 19].  On May 8, 2026, Petitioner appeared for her regular check-in with Immigration and Customs Enforcement ("ICE") and was detained despite no change in circumstances.  [*Id*. ¶ 2].

## III.   APPLICATION FOR TRO

Here, the Court finds Petitioner has made a sufficient showing to grant the requested relief.  *Winter v. Natural Res. Def. Council, Inc., 555 U.S. 7, 20 (2008)*; [*See* Application at 10–17].  However, because the Court grants relief on the Petition, as set forth below, the Court need not engage in the TRO analysis at this time.  Accordingly, the Application is **DENIED AS MOOT**.

## IV.   GRANTING PETITION

### A. Petitioner Has a Protected Liberty Interest

Petitioner argues that her detention violates her due process and statutory rights because she had a protected liberty interest in remaining free upon her release on OSUP.  [Petition at 5–6].  As provided in 8 C.F.R. § 241.13(i)(2), revocation is allowed of a noncitizen's release only if "there is a significant likelihood that the [noncitizen][1] may be removed in the reasonably foreseeable

---

[1] This Order uses the term "noncitizenship" in place of "alienage" and "noncitizen" in place of "alien."  The Court follows the U.S. Supreme Court and Ninth Circuit, where the use of the term "noncitizen" has become a common practice.  *See Patel v. Garland*, 596 U.S. 328 (2022) (Barrett, J.); *United States v. Palomar-Santiago*, 593 U.S. 321 (2021) (Sotomayor, J.); *Barton v. Barr*, 590 U.S. 222, 226 n.2, (2020) (Kavanaugh, J.) ("This opinion uses the term 'noncitizen' as equivalent to the statutory term 'alien.'" (citing 8 U.S.C. § 1101(a)(3))); *Avilez v. Garland*, 69 F.4th 525 (9th Cir. 2023); *Arce v. United States*, 899 F.3d 796 (9th Cir. 2018).  Additionally, this Court thinks it is prudent to "avoid language that reasonable readers might find offensive or distracting—unless the biased language is central to the meaning of the writing."  Chicago Manual of Style Online 5.253, https://www.chicagomanualofstyle.org/book/ed17/part2/ch05/psec253.html.  As noted by the Ninth Circuit, "[t]he word alien can suggest 'strange,' 'different,' 'repugnant,' 'hostile,' and 'opposed[.]'"  *Avilez*, 69 F.4th at 527 n.1 (citing *Alien*, *Webster's Third New International Dictionary* 53 (2002)).  Accordingly, because the word "noncitizen" is synonymous and does not encompass such negative connotations, the Court finds "noncitizen" is a better word choice.  *See Alien and Noncitizen, American Heritage Dictionary of English Language* 44, 1198 (5th ed. 2011).

future."  Moreover, ICE is required to provide Petitioner with notice of the reasons for the revocation of her OSUP.  8 C.F.R. §§ 241.13(h)(4)(i)(2), (3).

"Freedom from imprisonment . . . lies at the heart of the liberty" that the Fifth Amendment's Due Process Clause protects.  *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001).  "[T]he Due Process Clause applies to all 'persons' within the United States," including noncitizens, "whether their presence here is lawful, unlawful, temporary, or permanent."  *Id.* at 693.  Thus, a noncitizen under an OSUP has a constitutional liberty interest in their continued release from immigration detention.  *See Sun v. Santacruz*, No. EDCV-25-02198-JLS-JCx, 2025 WL 2730235, at *5–6 (C.D. Cal. Aug. 26, 2025) (finding the petitioner had a "substantial" liberty interest in "remaining out of immigration custody" pursuant to an OSUP and granting a TRO enjoining the respondents from re-detaining the petitioner without a pre-detention hearing before a neutral adjudicator).

8 U.S.C. § 1231(a) ("Section 1231(a)") governs the detention, release, and removal of noncitizens with an order of removal.  Under Section 1231(a), a noncitizen who has been ordered removed must be detained during the 90-day removal period.  8 U.S.C. §§ 1231(a)(1)(A), (a)(2)(A).  However, if a noncitizen is not removed within this period, they must be released "subject to supervision under regulations prescribed by the Attorney General."  *Id.* § 1231(a)(3).  While certain noncitizens may be detained beyond the 90-day removal period, if released, they must be subject to the same terms of supervision as under Section 1231(a)(3).  *Id.* § 1231(a)(6).

Section 241.4 and Section 241.13 set the terms of supervised release under Section 1231(a)(3) and 8 U.S.C. § 1231(a)(6) ("Section 1231(a)(6)"), including the conditions and procedures under which ICE may revoke release.  8 C.F.R. §§ 241.4(l), 241.13(i).  First, ICE may revoke a noncitizen's release if they violate a condition of their OSUP.  *Id.* §§ 241.4(l)(1), 241.13(i)(1).  Second, ICE may revoke release when, "on account of changed circumstances, [ICE] determines that there is a significant likelihood that the [noncitizen] may be removed in the reasonably foreseeable future."  *Id.* § 241.13(i)(2).  Third, certain officials may exercise their discretion to revoke the release.  *Id.* § 241.4(l)(2).

Upon revocation of release, ICE must provide the noncitizen a copy of the decision "set[ting] forth the reasons for the continued detention."  *Id.* § 241.4(d).  Additionally, the noncitizen must be "notified of the reasons for revocation" and be afforded "an initial informal interview promptly . . . to respond to the reasons for revocation stated in the notification."  *Id.* §§ 241.13(i)(3), 241.4(l)(1).  Thus, if a noncitizen is subject to 8 C.F.R. § 241.13, ICE may only detain them under more

limited circumstances than 8 C.F.R. § 241.4(l) and must similarly provide them an informal interview.  Failure to comply with these procedural requirements may constitute a due process violation.  *See Santamaria Orellana v. Baker*, No. 25-1788-TDC, 2025 WL 2444087, at *6 (D. Md. Aug. 25, 2025) ("[T]hese regulations are intended to provide due process in that they are fairly construed to be part of a procedural framework designed to ensure the fair processing of an action affecting an individual." (citation modified)).

The Government has declined to provide an opposition argument against the Application.  [Dkt. No. 10].  As such, on the basis of the Petition, the Court determines that the Government has failed to provide the procedural protections afforded to Petitioner under 8 C.F.R. § 241.4.  Furthermore, the Government has failed to provide Petitioner an informal interview to contest her re-detention as required by regulation.  [Petition at 6–12].  Thus, the Court finds that under the Fifth Amendment's Due Process Clause, Petitioner has a liberty interest in due process protections prior to re-detention following release on OSUP.

The Court now turns to the question of what procedures are appropriate to protect Petitioner's liberty interest.  Under *Mathews v. Eldridge*, the Court considers three factors: "First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." 424 U.S. 319, 335 (1976).

Under the first factor, Courts have regularly described a petitioner's interest in remaining out of custody as "substantial."  *Diaz v. Kaiser*, No. 3:25-CV-05071, 2025 WL 1676854 (N.D. Cal. June 14, 2025).  The weight of the factor increases as a party remains on bond for an extended period. *Morrissey v. Brewer*, 408 U.S. 471, 482 (1972).  Here, Petitioner was previously released on OSUP.  [Petition ¶¶ 11, 23, 50].  Thus, Petitioner's interest is significant because ICE released Petitioner on an order of supervision for years.  [*Id.*].

As to the second factor, the risk of an erroneous deprivation of Petitioner's liberty interest is high, with no process offered to Petitioner during her re-detention and no rationale provided for her re-detention.  [Petition ¶¶ 2, 20, 21–25].  This risk is heightened in the context of civil immigration detention, which must be "nonpunitive in purpose." *Zadyvdas*, 533 U.S. at 690.  Accordingly, the Court finds that Petitioner faces a substantial risk of an erroneous deprivation of her liberty.

As to the third factor, "the government has no legitimate interest in detaining individuals who have been determined not to be a danger to the community and whose appearance at future immigration proceedings can be reasonably ensured by a lesser bond or alternative conditions." *Hernandez v. Sessions*, 872 F.3d 976, 994 (9th Cir. 2017).  Although the Ninth Circuit's holding arose in a challenge to a different statute governing immigration detention, 8 U.S.C. § 1226(a), the Court finds the Ninth Circuit's reasoning equally availing here, as other courts have found.  *Pinchi v. Noem*, 792 F. Supp. 3d 1025, 1036 (N.D. Cal. 2025); *Hasratyan v. Bondi*, 2026 WL 288909, at *4 (C.D. Cal. Feb. 2, 2026); *Yataco v. Warden, Adelanto Det. Facility*, 2025 WL 4065463, at *6 (C.D. Cal. Dec. 26, 2025).  The government's previous decision to release Petitioner on an OSUP demonstrates that the government found that Petitioner was not a danger to the community and that her presence in future immigration proceedings could be "ensured by . . . alternative conditions." *Id*.

In sum, given Petitioner's strong interest in being free from immigration detention, the high risk of erroneous deprivation of her liberty interest, the high value of additional procedural safeguards, and the lack of government interest in detaining Petitioner without additional process, all three of the *Mathews* factors strongly favor Petitioner.  Therefore, the government's re-detention of Petitioner without adequate process violated Petitioner's right to procedural due process under the Fifth Amendment.  Because Petitioner's re-detention was unlawful, the proper remedy is release from custody.  *See Singh v. Bowen*, 2025 WL 3251437, at *9 (C.D. Cal. Nov. 21, 2025); *Yataco*, 2025 WL 4065463, at *7; *see also Faizyan v. Casey*, 2025 WL 3208844, at *7 (S.D. Cal. Nov. 17, 2025) (collecting cases).

## B. Petitioner is Entitled to Reasonable Notice and an Opportunity to Meaningfully Respond Before Any Future Re-Detention

Typically, "the Constitution requires some kind of a hearing before the State deprives a person of liberty or property." *Zinermon v. Burch*, 494 U.S. 113, 127 (1990) (citation omitted).  In the context of both parole and probation revocations – the nearest analog to Petitioner's immigration OSUP revocation – the Supreme Court has required pre-deprivation hearings to determine whether an individual's release may be revoked.  *See Morrissey*, 408 U.S. at 480-86; *see also Gagnon v. Scarpelli*, 411 U.S. 778, 782 (1973).  Given Petitioner's substantial liberty interest and the high risk of erroneous deprivation of that interest absent a pre-deprivation notice and opportunity to be heard, due process requires such procedures in compliance with the applicable regulations.  Courts in this circuit have determined that, in addition to release, individuals who have had their release orders

improperly revoked by respondents are entitled to an order enjoining and restraining respondents from re-detaining the non-citizen unless they follow the procedures set forth in § 241.13(i). *See Zimran v. Noem*, 2026 WL 161805, at *9 (C.D. Cal. Jan. 14, 2026) (collecting cases). Accordingly, the Court finds that such an order be entered with respect to Petitioner.

## C. Petitioner's Remaining Claims

Petitioner also argues that respondents have violated her rights to substantive due process under the Fifth Amendment, the INA, and the APA. [Petition at 11–12]. The "core of habeas corpus" is an attack on "the very duration of [a prisoner's] physical confinement." *Preiser v. Rodriguez*, 411 U.S. 475, 487–88 (1973). Because the Court has already concluded that Petitioner is entitled to release on procedural due process grounds, it need not address Petitioner's remaining claims. Petitioner may raise these claims again if she is subject to any future detention.

## V.    CONCLUSION

For the aforementioned reasons, the Court **GRANTS** the Petition as to Claim One and **ORDERS** as follows:

- Respondents are **ORDERED** to immediately release Petitioner from custody forthwith, and shall not impose any release restrictions on petitioner, such as electronic monitoring, unless deemed necessary at a future pre-deprivation hearing;
- Respondents are **ENJOINED** from re-detaining petitioner unless they first follow the procedures set forth in 8 C.F.R. § 241.13(i), including providing Petitioner with adequate pre-deprivation notice and a meaningful opportunity to respond;
- Respondents are **ORDERED** to return to Petitioner any seized identity documents at the time of her release; and
- Respondents are **ORDERED** to file a status report no later than May 22, 2026, regarding their compliance with this Order.

Lastly, a separate judgment will be issued.

**IT IS SO ORDERED.**